# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID HAMILTON, | : | |
| | | Case No. 3:11cv00102 |
| Plaintiff, | : | |
| | | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | (By full consent of the parties) |
| | | |
| GORDON J. SPURLING, et al., | : | |
| | | |
| Defendants. | : | |

## DECISION AND ENTRY

## I.    INTRODUCTION

Plaintiff David Hamilton brings this case *pro se* under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.; the TCPA's accompanying Regulations; and the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01, et seq.

Plaintiff names and describes three Defendants: (1) Gordon J. Spurling, a chiropractor licensed by the California Board of Chiropractic Examiners; (2) Midwest Healthcare Management, a business that telemarkets chiropractic services; and (3) Westside Therapy Group, also known as Chiropractic Therapy West, owned and operated by or affiliated with Defendant Spurling.  (Doc. #29).

This case is before the Court following a bench trial and upon the record as a whole.  In addition to testifying at trial, Plaintiff produced two witnesses: Yolanda Denise

Bagley and Lauren Snelling.[1]

Defendants alleged to have subpoenaed Plaintiff's wife, Lynne Hamilton, for trial, but Plaintiff indicated at the beginning of trial this is not correct.  To resolve the dispute, Defendants asked for an adverse witness instruction and to proffer the evidence regarding her deposition testimony.  The Court granted Defendants' request at the beginning of trial and Plaintiff did not object.  Prior to their closing argument Defendants attempted to proffer testimony from Mrs. Hamilton's deposition at which time Plaintiff objected.  The Court thereafter ordered Plaintiff to pay for transcription of the deposition testimony.  To date, Plaintiff has not produced the transcript or otherwise paid for transcription services.  The Court has therefore decided this issue without consideration of Mrs. Hamilton's testimony or proffer of testimony.  Plaintiff will suffer no prejudice as a result.  In fact, Plaintiff was adamantly opposed to inclusion of his wife's testimony because he alleged she was not subpoenaed for the second trial date.

The following opinion contains findings of fact and conclusions of law as required under Fed. R. Civ. P. 52(a).  The Court reaches its findings of fact based on a preponderance of the admissible evidence.

---

[1] The Court finds the testimony of Lauren Snelling provides little support for Plaintiff's case. Ms. Snelling is employed as Office Manager at Chiropractic Therapy South, in Cincinnati.  The Court recognizes Defendant Spurling's connection with Chiropractic Therapy South and Chiropractic Therapy West, however, to the extent Ms. Snelling's testimony was elicited to show the entities are similarly operated, and violate the TCPA or OCSPA, it has not done so.  In fact, Ms. Snelling had, at best, minimal knowledge regarding the telemarketing practices at Chiropractic Therapy South, and no personal knowledge about the telemarketing practices at Chiropractic Therapy West.  For these reasons, the Court therefore provides her testimony very little weight in deciding this matter.

The parties have consented to jurisdiction under this Judicial Officer pursuant to 28 U.S.C. § 636(c).

## II.  BACKGROUND

On Monday, March 21, 2011, Plaintiff's wife, Lynne Hamilton, was involved in a traffic accident in Harrison Township, Ohio.  Mrs. Hamilton's vehicle was rear-ended, but the crash report indicates she did not suffer any injuries as a result.  A few days later, on Friday, March 25, 2011, the Hamiltons started receiving telemarketing calls from, or on behalf of, various chiropractic offices.  The callers attempted to solicit chiropractic services to Mrs. Hamilton due to her recent involvement in an automobile accident.

Mr. Hamilton testified at trial that some of the callers provided their name and business information at the beginning of the phone call and respected his requests not to call back.  According to Mr. Hamilton, however, some of the callers refused to provide their name or business information.  Mr. Hamilton testified the only way to obtain this information was for his wife to set up an appointment with the chiropractor.  Mr. Hamilton also testified some of the callers called back even after being informed the number they were calling was registered on the National Do-Not-Call Registry.[2]

One series of phone calls was made from a woman who identified herself as "Denise."  These calls started on March 28, 2011 and form the basis for Plaintiff's claims

---

[2] Pursuant to the authority granted to them under 47 U.S.C. § 227(c), the FCC adopted a national do-not-call registry providing "residential consumers with a one-step option to prohibit unwanted telephone solicitations," effective October 1, 2003.  Federal Communications Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

3

against Defendants Spurling, Midwest Healthcare Management, and Westside Therapy Group ("Chiropractic Therapy West").

The evidence presented at trial establishes Yolanda Denise Bagley made four phone calls to the Hamiltons' cellular phone number 937-274-6675, between March 28, 2011 and March 31, 2011.  Decided herein is whether any of these calls violated the Telephone Consumer Protection Act or Ohio Consumer Sales Practices Act, as alleged by Plaintiff.

At 9:13 a.m. on Monday, March 28, 2011, Mr. Hamilton answered the phone and Ms. Bagley identified herself using her middle name, Denise.  Ms. Bagley called the Hamiltons' cellular phone number 937-274-6675 on behalf of Chiropractic Therapy West.[3]  The cell phone to which the phone number 937-274-6675 is assigned, although a mobile device, was connected to an electronic device in the Hamiltons' residence known as a "dock-n-talk."[4]  Mr. Hamilton testified this cell phone remains in the dock-n-talk at all times and functions as the Hamiltons' residential phone.

After Mr. Hamilton answered the phone, Ms. Bagley asked to speak with Lynne Hamilton.  Upon this request, Mr. Hamilton handed the phone to his wife.  Mr. Hamilton

---

[3] Ms. Bagley made telemarketing phone calls for Chiropractic Therapy West for a period of approximately two weeks.  She was paid hourly for her work, used her personal cell phone to make the calls, and worked from home.  She testified she only made about twenty phone calls and was eventually "let go" due to "lack of work."  Ms. Bagley is not currently employed.  She has previously worked as a telemarketer for a non-profit organization.

[4] A "dock-n-talk" is a device that essentially converts a cellular telephone into a home phone. While attached to the "dock-n-talk" device at the Hamiltons' residence, their cell phone was capable of being used to make or receive phone calls from various handsets in the house, similar to the way a traditional landline phone is used.

4

then proceeded to pick up another handset in order to remain on the call.  Hereafter, Ms. Bagley and Mr. Hamilton's testimony regarding the phone calls differs significantly.

According to Ms. Bagley, once Mrs. Hamilton was present on the phone, she read a telemarketing script provided to her by Chiropractic Therapy West.  The text of the telemarketing script is fully set forth in the following section.  According to Ms. Bagley, Mrs. Hamilton was interested in setting up an appointment with the chiropractor, Dr. Scott Bruce, at Chiropractic Therapy West.  Ms. Bagley testified she scheduled an appointment for Mrs. Hamilton to see Dr. Bruce at 2:00 p.m. that same day, March 28, 2011.  Ms. Bagley testified no one ever told her not to call again, or they were on the do-not-call list.

Plaintiff testified the conversation went differently.  According to Plaintiff, after he answered the call and provided his wife with the phone, he remained on the call on another handset while also taking notes and searching the Internet for information about the caller.  According to Plaintiff, Ms. Bagley identified herself as "Denise" and stated she was calling on behalf of Chiropractic Therapy Center.  Plaintiff claims Denise informed his wife that a chiropractic consultation was required for insurance, and is "free to you."  Thereafter, Plaintiff claims he asked who was calling and that Ms. Bagley simply responded "can I make an appointment now?"  Plaintiff testified that despite his best efforts, Ms. Bagley would not divulge the name of the chiropractor on whose behalf she was calling.  Plaintiff testified that he asked Ms. Bagley if she was from State Farm Insurance – the insurance of the other at-fault party in the accident – but she again simply

5

asked if she could make an appointment.  Plaintiff testified his wife made an appointment, but only in an effort to find out the name of the chiropractor.  Thereafter, according to Plaintiff, Ms. Bagley provided the name of the chiropractor and address of the offices. According to Plaintiff he then asked Ms. Bagley if she honored the do-not-call list, requested she stop calling, and hung up the phone.

Mr. Hamilton testified that shortly after this phone call with Ms. Bagley he was going grocery shopping near Chiropractic Therapy West's location and decided to stop in. Mr. Hamilton testified that upon entering the location he saw questionable conditions and thereafter left.  Mr. Hamilton then testified after he left Chiropractic Therapy West he immediately contacted Ms. Bagley to tell her not to call again.  Ms. Bagley did not mention being contacted by Mr. Hamilton during any of her testimony, nor did Plaintiff attempt to elicit testimony from her regarding this fact.

Ms. Bagley testified that later that day she received a call from the chiropractor, Dr. Bruce, informing her that Mrs. Hamilton did not appear for her scheduled appointment and asking if she would place a follow up call.  Ms. Bagley complied. She called the Hamiltons' cellular phone number 937-274-6675 a second time at 2:52 p.m. on March 28, 2011.  Ms. Bagley testified that during the second call she spoke with Mrs. Hamilton and inquired as to why she did not show up for her scheduled appointment with Dr. Bruce.  Thereafter, Ms. Bagley testified that Mrs. Hamilton informed her she did not show up to the appointment as scheduled because she had a problem with transportation, but wished to reschedule another appointment for 2:00 p.m. the following day, March 29,

6

2011. According to Mr. Hamilton, however, during the second phone call he also spoke to Ms. Bagley, informed her to stop calling, and hung up the phone.

Ms. Bagley testified that after Mrs. Hamilton did not show up for the second appointment, she called the Hamiltons' cellular phone number 937-274-6675 again. The records indicate two more calls were placed to the Hamiltons' cellular phone number 937-274-6675: on March 30, 2011 at 2:40 p.m., and March 31, 2011 at 8:38 a.m. Both calls went to the Hamiltons' voicemail and Ms. Bagley left a message. No more calls were placed by Ms. Bagley, or on behalf of Chiropractic Therapy West, after this time.

## III. ANALYSIS

### A. The Telephone Consumer Protection Act

Congress passed the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 in response to "voluminous consumer complaints about abuses of telephone technology– for example, computerized calls dispatched to private homes . . . ." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.* "The TCPA thus seeks to curb abusive telemarketing practices that threaten the privacy of consumers and businesses." *Ashland Hosp. Corp. v. SEIU, Dist. 1199 WV/KY/OH*, 2013 U.S. App. LEXIS 3616, *7 (6th Cir. 2013).

The TCPA generally makes it unlawful for any person, without the called party's prior express consent, to use an automatic telephone dialing system or an artificial or

7

prerecorded voice message to call[5] any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. 47 U.S.C. § 227(b)(1)(A). With few exceptions, the TCPA also prohibits using artificial or prerecorded voice messages to call residential telephone lines without prior express consent, to send unsolicited advertisements to fax machines, and to use automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. 47 U.S.C. § 227(b)(1)(B),(C), and (D). The manipulation of caller-identification information is likewise prohibited under the TCPA. 47 U.S.C. § 227(e).

In addition to other enforcement mechanisms contained within the Act, the TCPA provides a person or entity with a private right of action. Specifically, section (b)(3) of the Act, captioned "Private right of action," provides:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
>
> > (A) an action based on violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

---

[5] "While the TCPA does not define 'call,' that operative term quite naturally suggests some kind of direct communication between two parties – the caller and the caller's intended recipient." *Ashland Hosp. Corp.*, 2013 U.S. App. LEXIS 3616 at *9-*10.

47 U.S.C. § 227(b)(3).

In this case, the Hamiltons' cellular phone number 937-274-6675 was called by Ms. Bagley a total of four times. Plaintiff has not shown by a preponderance of the evidence that any of these calls violated the TCPA's "restrictions on the use of automated telephone equipment." 47 U.S.C. § 227(b)(1)(A)-(D). This is so because, quite simply, Ms. Bagley did not use any "automatic telephone dialing system," as defined in the TCPA. Rather, all of the evidence and testimony quite clearly indicates the phone calls originated from Ms. Bagley's personal cell phone. An "automatic telephone dialing system" is defined under the TCPA as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Aside from evidence proving Ms. Bagley used her personal cell phone to make the calls on behalf of Chiropractic Therapy West, no evidence or testimony was presented regarding the technological capabilities of this device. Even assuming her cell phone has the ability to store phone numbers in a common feature known as a "contacts list," no evidence was provided to indicate it could do so "using a random or sequential number generator" – as is required for a device to be considered an "automatic telephone dialing system" under section 227(a)(1) of the TCPA.

Ms. Bagley's calls also did not violate the TCPA's restrictions on the use of automated telephone equipment because she did not use "an artificial or prerecorded

9

voice" during any of her four phone calls to the Hamiltons' cellular phone number 937-274-6675. The evidence and testimony also quite clearly show that Ms. Bagley made no attempt to alter the caller identification information[6] on any of her calls to the Hamiltons' cellular phone number, and therefore, also did not violate the TCPA's "prohibition on provision of inaccurate caller identification information." *See* 47 U.S.C. § 227(e).

The analysis does not end here, however. The Court must also consider whether any of Ms. Bagley's phone calls to the Hamiltons' cellular telephone number 937-274-6675 violated any of the Federal Communications Commission's implementing regulations. The FCC, pursuant to the TCPA, "promulgated regulations designed to balance the privacy concerns of consumers against the continued viability of the telemarketing industry . . . ," and set forth those regulations ("TCPA Regulations") in 47 C.F.R. § 64.1200. *Charvat v. GVN Mich*, *Inc.*, 531 F. Supp. 2d 922, 925 (6th Cir. 2008).

Under the TCPA, a person also has a private right of action for violation of the TCPA Regulations:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State–
>
> > (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

---

[6]"Caller identification information" is defined in the TCPA as "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a telecommunications service or IP-enabled voice service." 47 U.S.C. § 227(e)(8)(A).

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5). As is evident in section 227(c)(5) of the TCPA, a private right of action only arises for a person[7] who has received more than one telephone call in violation of the TCPA Regulations within a 12-month period. Thus, the Court now turns to the TCPA Regulations to determine whether Plaintiff has met his burden of proving any violation of the TCPA Regulations occurred.

---

[7] Whether *any* person has standing under the TCPA to bring a claim (as opposed to only the *intended recipient* of a call, message, fax, etc.) remains unsettled. *See Leyse v. Bank of America National Ass'n*, 2010 U.S. Dist. LEXIS 58461 (S.D.N.Y.) (finding party does not have standing to bring suit under TCPA when not intended recipient of the telemarketing call); *see also Kopff v. World Research Group LLC*, 568 F. Supp. 2d 39 (D.D.C. 2008) (finding administrative assistant who retrieved unsolicitated fax addressed to president of the company did not have standing to bring suit under the TCPA because she was not the intended recipient of the fax); *but see Anderson v. AFNI, Inc.* 2011 U.S. Dist. LEXIS 51368 (E.D. Pa. 2011) (finding standing where plaintiff was repeatedly called by defendant, attempting to collect a debt owed by an individual with no connection to plaintiff or plaintiff's phone number); *see also D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 624 (N.D. Ill. 2011)("Because [defendant] intended to call Plaintiff's cellular phone number, Plaintiff received the calls, and Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a 'called party' under the TCPA."); *see also Kane v. Nat'l Action Fin. Servs.*, 2011 U.S. Dist. LEXIS 141480 (E.D. Mich. 2011) (finding plaintiff has standing to bring suit under TCPA where his phone number was called by debt collector several hundred times attempting to collect debt of another person he does not know). Thus, while it is the finding of this Court that Mrs. Hamilton was the intended recipient of all four calls placed by Ms. Bagley on behalf of Chiropractic Therapy West, the Court will assume Plaintiff, as joint user of the telephone number 937-274-6675, has statutory standing to bring suit under the TCPA.

The first few sections of the TCPA Regulations, 47 C.F.R. § 64.1200(a)(1)-(4) and (b)(1)-(2), all apply to an individual using an automatic telephone dialing system, artificial or prerecorded voice, or facsimile machine. As such, Ms. Bagley's use of a cell phone – with no evidence it possessed the above mentioned capabilities – did not violate these sections of the TCPA regulations.

Plaintiff also did not prove by a preponderance of the evidence that Ms. Bagley violated subsection (a)(5) of the TCPA Regulations, prohibiting a person or entity from "[d]isconnect[ing] an unanswered telemarketing call prior to at least 15 seconds or four (4) rings." In fact, all of the calls were completed in some regard: the first two calls Ms. Bagley made were answered by either Mr. or Mrs. Hamilton, and the last two calls were ended after Ms. Bagley left a message for Mrs. Hamilton on the Hamiltons' voicemail. Plaintiff also has not established by a preponderance of the evidence that Ms. Bagley violated subsection (a)(6) (relating to "abandoned" calls), or (a)(7) (regarding use of telephone to determine whether line is fax or voice line).

All of Ms. Bagley's calls were made between 8 a.m. and 9 p.m.[8] (local time at the called party's location), and therefore also do not violate subsection (c)(1) (prohibiting calls before 8 a.m. or after 9 p.m.). Plaintiff, however, has proven by a preponderance of the evidence that Ms. Bagley's first call to his cellular telephone number 937-274-6675 [9]

---

[8] The first call occurred on 3/28/2011 at 9:13 a.m.; the second on 3/28/2011 at 2:52 p.m.; the third on 3/30/2011 at 2:40 p.m.; and the fourth on 3/31/2011 at 8:38 a.m.

[9] 47 C.F.R. § 64.1200(e) makes clear that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to

violated subsection (c)(2) of the TCPA Regulations. This subsection sets forth the

following prohibition:

> (c) No person or entity shall initiate any telephone solicitation, as defined in paragraph (f)(12) of this section, to:

> . . .

> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:

>> (i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:

>>> (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;

>>> (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;

>>> (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

>>> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

---

wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"

(E) Purchasing the national do-not-call database. It uses a process to ensure that it does not sell, rent, lease, purchase or use the national do-not-call database, or any part thereof, for any purpose except compliance with this section and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. It purchases access to the relevant do-not-call data from the administrator of the national database and does not participate in any arrangement to share the cost of accessing the national database, including any arrangement with telemarketers who may not divide the costs to access the national database among various client sellers; or

(ii) It has obtained the subscriber's prior express invitation or permission. Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed; or

(iii) The telemarketer making the call has a personal relationship with the recipient of the call.

47 C.F.R § 64.1200(c)(2). Evidence in this case establishes the phone number 937-274-6675 was registered on the National Do Not Call Registry since at least 6/30/2003, and remained on the Registry during the time period in which Ms. Bagley placed her four calls. Plaintiff also established by a preponderance of the evidence that the first call constitutes a "telephone solicitation," as defined in subsection (f)(12). Subsection (f)(12) provides:

The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:

(i) To any person with that person's prior express invitation or permission;

(ii) To any person with whom the caller has an established business

14

relationship; or

(iii) By or on behalf of a tax-exempt nonprofit organization.

47 C.F.R. § 64.1200(f)(12).  Plaintiff has established by a preponderance of the evidence that Ms. Bagley initiated the telephone call to 937-274-6675 in order to solicit chiropractic services to his wife, Lynne Hamilton.  The evidence also establishes that neither Mr. or Mrs. Hamilton provided any prior express invitation or permission to receive the telephone solicitation, did not have any type of business relationship with Chiropractic Therapy West at the time of the first call, and that Ms. Bagley's call was not on behalf of a tax-exempt nonprofit organization.

Plaintiff has therefore met his burden of proving by a preponderance of the evidence that Ms. Bagley's first phone call violated the TCPA Regulations, specifically 47 C.F.R § 64.1200(c)(2).

In order to recover under the TCPA for this violation of the TCPA Regulations, however, Plaintiff must have received more than one telephone call within a 12-month period by or on behalf of the same entity in violation of the regulations.  *See* 47 U.S.C. § 227(c)(5).  Thus, while Plaintiff has established that Ms. Bagley's first call violated the TCPA Regulations, he can only recover under the Act if he also proves that at least one of Ms. Bagley's other three calls to 937-274-6675 also violated the TCPA Regulations.  The Court does not find he has met his burden in this regard.

Plaintiff testified that upon receiving the first phone call, and briefly speaking with Ms. Bagley, he handed the phone off to his wife but remained on the call on another

15

handset.  Plaintiff did not call his wife as a witness at trial, but he testified that Ms.

Bagley would not indicate during the call the name of the chiropractor on whose behalf

she was calling until his wife agreed to see the chiropractor.  Plaintiff also testified that

Ms. Bagley identified the chiropractic offices incorrectly as "Chiropractic Therapy

Center," instead of "Chiropractic Therapy West."  Plaintiff testified that in order to find

out the name of the chiropractor, his wife agreed to make an appointment for later that

day.  Plaintiff testified that after his wife agreed to the appointment, and after Ms. Bagley

then provided the name of the chiropractor – Scott R. Bruce – he told Ms. Bagley they

were on the do-not-call list and not to call again.  The Court does not find Plaintiff's

testimony credible, however, to the extent it contradicts the testimony of Ms. Bagley.

Ms. Bagley testified that when placing her telemarketing phone calls on behalf of

Chiropractic Therapy West, she was required to, and did, read from a predetermined

script provided to her by Dr. Spurling, on behalf of Chiropractic Therapy West.  A copy

of the script, submitted into evidence as Plaintiff's Exhibit 13, reads as follows:

### MARKETING SCRIPT - CHIROPRACTIC THERAPY WEST

Hello, may I speak to Mr. or Mrs. _____?

Good Morning/Afternoon, my name is _____. I am calling from The
Chiropractic Therapy West.  I review the local crash reports on a daily basis and I
understand that you have recently been the victim of an automobile accident.  I am
calling to see if you are experiencing any symptoms as a result of your accident,
such as headaches, neck or back pain, or any other areas of discomfort.

Many people who are involved in accidents are unaware that the treatment of their
injuries may be covered by the at-fault party or even their own auto insurance.

**IF SYMTOMS>**[sic]

If you have any symptoms as a result of this accident the Chiropractic Doctor I work for, Dr. Scott Bruce has allowed me to offer you a complimentary consultation to determine if a chiropractic evaluation is needed.  If Dr. Bruce finds that chiropractic treatment would benefit you, the staff will assist you in locating any insurance liability to help you recover your chiropractic expenses.  Also any additional questions about treatment or payment can be answered at that time.

**If Patient wants to schedule an appointment>**

You are under no obligation to respond to this offer now but if you would like, I can see if I can find a time that works for you today.  Do you prefer the morning or afternoon?

Very good Mr. or Mrs. _____, we will see you at _____.  Do you need directions to our office?

**IF NO SYMTOMS>**[sic]

It is well known that many victims of accidents may not feel any symptoms for days or weeks after their accident so please keep our number should you have any questions or need chiropractic services in the future.

Read and accepted by:

_____                          _____
        Telemarketer                                              Date

During direct examination by Plaintiff, Ms. Bagley continually insisted she did not say "Chiropractic Therapy Center," but rather "Chiropractic Therapy West."  Ms. Bagley maintained throughout her testimony that she did not diverge from the script, but read it as provided to her.  Ms. Bagley even read the script aloud during trial just as how she read everything during the first phone call.  Plaintiff's notes, to which he testified were taken simultaneously with the phone calls, indicate Ms. Bagley stated "Chiropractic Therapy

Center." During cross-examination, however, Plaintiff acknowledged he made some mistakes in his notes, and the Court finds his testimony regarding this fact is credible. Due to the volume of calls Plaintiff testified to receiving from various telemarketers during the time Ms. Bagley called, such mistakes are understandable. Accordingly, the Court finds Ms. Bagley identified the call as being made on behalf of Chiropractic Therapy West.

In further support of this Court's finding that Ms. Bagley did not deviate from the script, the Court notes that Mr. Hamilton's testimony regarding the content of the first phone call is inconsistent. For example, Mr. Hamilton testified that Ms. Bagley did not follow a script, and in fact, would not provide the name of the chiropractor unless, and until, his wife agreed to set up an appointment. Mr. Hamilton testified that after his wife set up the appointment – solely for the purpose of obtaining the chiropractor's name – Ms. Bagley was asked if she honored the do-not-call list, she responded she was not required to, and he ended the phone call. Yet Plaintiff also testified that while sitting in on the phone call on another handset, and simultaneously taking handwritten notes of the conversation, he was also on a computer searching the Internet for information regarding the identity of the caller and the chiropractic offices. Even assuming Plaintiff is an excellent multitasker, the problem with this testimony is that he testified he searched for information relating to Dr. Scott Bruce online (which he testified resulted in finding information about a Dr. Scott R. Bruce located in Marysville, Ohio), but then he testified that Ms. Bagley would not provide the name of the doctor unless, and until, his wife set

18

up an appointment. Yet Plaintiff testified that after his wife set up an appointment, and was thereafter provided with the name of the chiropractor, he asked Ms. Bagley if she honored the do-not-call list and then ended the phone call. Thus, if the events occurred as Plaintiff testified, it is very doubtful that Plaintiff would have had sufficient time to conduct an online search for Dr. Scott R. Bruce's name, and review the search results online, prior to terminating the phone call. The fact, as Plaintiff testified, that he had time to search for Scott R. Bruce online and review search results prior to ending the phone call, supports the conclusion Dr. Bruce's name must have been provided earlier in the phone call – not at the very end as stated by Plaintiff. Such a conclusion is further supported by the testimony of Ms. Bagley, as well as the text of the marketing script Ms. Bagley used during the call. It is therefore the finding of this Court that Ms. Bagley read the telemarketing script as written, and informed Mrs. Hamilton of the name "Dr. Scott Bruce" in the phone call prior to setting up, or requiring, any appointment.

The Court also does not find credible Plaintiff's testimony that he informed Ms. Bagley his number was on the do-not-call list or otherwise requested not to be called again. The Court will not speculate as to the reason why Mrs. Hamilton might set up an appointment with Dr. Bruce, but it is the finding of this Court that Mrs. Hamilton did set up an appointment with Dr. Bruce for 2:00 p.m. on March 28, 2011. The Court also finds that neither Mr. or Mrs. Hamilton thereafter requested of Ms. Bagley to cancel the appointment nor informed her that their cellular phone number 937-274-6675 was on the National Do Not Call Registry or to otherwise stop calling.

19

The Court again notes Plaintiff's testimony provides further support for this conclusion. Specifically, Plaintiff testified that shortly after the conversation took place with Ms. Bagley on 3/28/2012 at 9:18 a.m., and while on his way to go grocery shopping at a nearby business, he stopped in at Chiropractic Therapy West's location at 1906 Needmore Road, in Dayton, Ohio. Upon visiting the location and seeing questionable conditions therein, Plaintiff testified that he called Ms. Bagley's cell phone and left a message telling her not to call them again. If, however, Plaintiff had already informed Ms. Bagley they were on the do-not-call list and not to call again – as he testified to doing during the first phone call – the Court is left with considerable doubt that Plaintiff would have thereafter ventured out to visit the office – even if nearby – then called Ms. Bagley to tell her for a second time not to call again. Phone records from Plaintiff's cell phone number 937-274-6675 likewise do not indicate such a call was made. While Plaintiff testified he made such a call from a second cell phone he happened to take with him to go grocery shopping that day, he did not submit into evidence any phone records or other evidence supporting this contention. Ms. Bagley also did not testify that Plaintiff ever contacted her or left a message on her cell phone, and Plaintiff did not attempt to elicit any testimony from Ms. Bagley regarding this fact. The Court therefore does not find that Plaintiff left a message for Ms. Bagley indicating his wife wanted to cancel her chiropractic appointment with Dr. Bruce. Rather, the Court finds Mrs. Hamilton made an appointment with Dr. Scott R. Bruce for 2:00 p.m. on 3/28/2012, for reasons unknown, and then simply did not show up to the appointment or otherwise call to cancel.

The Court finds Ms. Bagley placed a second call to Plaintiff's cellular phone number 937-274-6675 at 2:52 p.m. on 3/28/2011.  The second call, however, was for the purpose of following up regarding Mrs. Hamilton's failure to appear for her scheduled appointment at 2:00 p.m. earlier in the day, without cancelling or otherwise rescheduling. During the second call, Ms. Bagley testified that Mrs. Hamilton informed her she had a problem with obtaining transportation to the appointment but would like to reschedule for the next day.  Ms. Bagley further testified that at no point during the first or second call did Mr. or Mrs. Hamilton tell her they were on the do-not-call list or not to call again, and, in fact, had they made such a request she would have honored it.  The Court again finds Ms. Bagley's testimony regarding the second call credible.  The Court further finds that Mrs. Hamilton scheduled a second appointment with Dr. Bruce for the next day, again for reasons the Court will not speculate upon.  The next day, Mrs. Hamilton again did not show up for the appointment.  She also did not call to cancel or otherwise reschedule.

Ms. Bagley thereafter called Plaintiff's cellular phone number 937-274-6675 a third time on 3/30/2011 at 2:40 p.m. to follow up regarding the second missed appointment.  When no one answered, she left a message for Mrs. Hamilton on the Hamiltons' voicemail.  The next day, Ms. Bagley again followed up regarding the second missed appointment.  She placed a fourth call to Plaintiff's cellular phone number 937-274-6675 at 8:38 a.m.  Again, Ms. Bagley left a message when neither Mr. or Mrs.

Hamilton answered the call.[10]  Plaintiff did not provide a copy of either message, but the Court finds Ms. Bagley's testimony credible that these messages were for Mrs. Hamilton regarding her second missed appointment.

Plaintiff has met his burden of proving the first call placed by Ms. Bagley on behalf of Chiropractic Therapy West violated the TCPA Regulations, but he has not also done so regarding the second, third, and fourth phone calls.  Instead, by setting up an appointment to meet with Dr. Scott R. Bruce at 2:00 p.m. on March 28, 2011, Mrs. Hamilton created an "established business relationship" with Chiropractic Therapy West. *See* 47 C.F.R. § 64.1200(f)(4).  Under the TCPA Regulations, an "established business relationship" is defined as follows:

> The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(4).[11]  Although Mrs. Hamilton did not have an established

---

[10]The Court notes that Mr. Hamilton filed this lawsuit on 3/30/2011.  Plaintiff has not, however, provided any evidence indicating a copy of the Complaint, or other notice of the lawsuit, was received by any Defendant, or Ms. Bagley, prior to her third and fourth call.

[11] Although an administrative agency, the FCC's definition of what constitutes an "existing business relationship" is given deference by this Court.  *See Charvat v. Dispatch Consumer Servs.*, 95 Ohio St. 3d 505, 509 (Ohio 2002) ("*Chevron* requires this court to defer to the agency regulation as to the definition of an EBR.  Certainly, the FCC's definition is a reasonable one given the Act's purpose of regulating telemarketing.") (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467

business relationship with Dr. Bruce at Chiropractic Therapy West prior to the first call by Ms. Bagley, it is the finding of this Court that she agreed to set up an appointment with Dr. Bruce for chiropractic services during the first call. Setting up the appointment constitutes an "inquiry" or "application" regarding chiropractic services offered at Chiropractic Therapy West. Thereafter, absent Mrs. Hamilton's termination[12] of this established business relationship, Ms. Bagley's second, third, and fourth calls following up regarding the missed appointment do not meet the definition of a "telephone solicitation" under the TCPA Regulations.

> The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:
>
>> (i) To any person with that person's prior express invitation or permission;
>>
>> (ii) To any person with whom the caller has an established business relationship; or
>>
>> (iii) By or on behalf of a tax-exempt nonprofit organization.

47 C.F.R. § 64.1200(f)(12). Having already determined neither Mr. nor Mrs. Hamilton

---

U.S. 837, 843-44 (1984)).

[12] The Court notes, without deciding, that even if it found Plaintiff's testimony credible that he placed a call to Ms. Bagley cancelling his wife's appointment and telling her not to call again, because it was not from Mrs. Hamilton directly, it may not have been effective to terminate her established business relationship with Dr. Bruce at Chiropractic Therapy West. *See* 47 C.F.R. § 64.1200(f)(4) ("The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary **two-way** communication between **a** person or entity and **a** residential subscriber . . . which relationship has not been previously terminated by **either party**.")(emphasis added); *see also Charvat*, 95 Ohio St. 3d at 511 ("[A]s the FCC report points out, it is not until a person who has an EBR with a telemarketer requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200.").

ever informed Ms. Bagley of the fact their phone number was on the National Do Not

Call Registry, or otherwise terminated any type of business relationship with Chiropractic

Therapy West, Ms. Bagley's second, third, and fourth phone calls did not constitute

"telephone solicitations" under the TCPA Regulations.  As a result, these three calls did

not violate subsection (c)(2) of the TCPA Regulations.

Finally, the Court notes that Plaintiff has also not proven by a preponderance of

the evidence that Defendants violated subsection (d) of the TCPA Regulations.  47 C.F.R.

§ 64.1200(d) sets forth the following:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.  The procedures instituted must meet the following minimum standards:

> > (1) Written policy.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> > (2) Training of personnel engaged in telemarketing.  Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> > (3) Recording, disclosure of do-not-call requests.  If a person or entity making a call for telemarketing purposes (or on whose behalf a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request.  If such requests are recorded or maintained by a party other than the person or entity on whose

behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

(7) Tax-exempt nonprofit organizations are not required to comply with 64.1200(d).

47 C.F.R. § 64.1200(d). Even assuming Ms. Bagley's second, third, and fourth phone calls regarding Mrs. Hamilton's missed appointments were made for "telemarketing purposes," as defined by TCPA Regulations, Plaintiff has nonetheless failed to meet his burden of proving by a preponderance of the evidence that Defendants did not "institute[] procedures for maintaining a list of persons who request not to receive telemarketing

calls," made by or on their behalf. Actually, much of the testimony elicited from Ms. Bagley indicated that, in fact, Defendants had instituted, at the very least, many, if not all, of the minimum procedures as required in subsection (d). To the extent Ms. Bagley's testimony did not fully address all of Chiropractic Therapy West's telemarketing procedures, Plaintiff likewise did not prove Chiropractic Therapy West lacked such procedures.

Accordingly, Plaintiff has only proven the first call made by Ms. Bagley, on behalf of Chiropractic Therapy West, violated the TCPA – specifically subsection (c)(2) of the TCPA Regulations. Plaintiff, however, has not met his burden of proving by a preponderance of the evidence that Ms. Bagley's three subsequent calls were also made in violation of the TCPA, or any of the TCPA Regulations. Having only established one violation of the TCPA Regulations, Plaintiff cannot prevail on claims raised under the Act.

## B. The Ohio Consumer Sales Practices Act

The Ohio Consumer Sales Practices Act ("OCSPA") provides, in relevant part, that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). Likewise, Ohio Revised Code § 1345.03(A) provides "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction."

A "supplier" is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." Ohio Rev. Code

26

§ 1345.01(C). A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. . . ." Ohio Rev. Code § 1345.01(A). A "consumer" is defined as "a person who engages in a consumer transaction with a supplier." Ohio Rev. Code § 1345.01(D).

Plaintiff alleges the four phone calls placed on behalf of Chiropractic Therapy West violated the TCPA, and therefore also violated the OCSPA. Plaintiff also claims the four phone calls constitute "unfair or deceptive acts or practices" under the OCSPA because they violated provisions of the Ohio Telephone Sales Solicitation Act ("TSSA"), Ohio Rev. Code §§ 4719.01-4719.18. *See* Ohio Rev. Code § 4719.14 (setting forth various sections of the TSSA, which, if violated, constitute an "unfair or deceptive act or practice," in violation of the OCSPA).

Regardless of the alleged violations, to prevail on any claim under the OCSPA a plaintiff must prove the "unfair or deceptive act or practice" or "unconscionable act or practice" was made "in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A).

Thus, as a preliminary matter, the Court first considers whether any of Ms. Bagley's acts or practices, even if "unfair," "deceptive," or "unconscionable," were made "in connection with a consumer transaction." The Court, having previously determined the calls made by Ms. Bagley were initiated either to solicit chiropractic services to Mrs.

27

Hamilton or follow up regarding her missed appointments with Dr. Bruce, concludes, as to Plaintiff, they do not.

Simply put, not one of Ms. Bagley's calls to the Hamiltons' cellular phone number 937-274-6675 was made for the purpose of soliciting chiropractic services to Plaintiff, himself, nor did such a solicitation[13] occur.  Instead, the evidence and testimony overwhelmingly indicates the purpose of each and every phone call made by Ms. Bagley on behalf of Chiropractic Therapy West was either to solicit chiropractic services to Mrs. Hamilton or follow up regarding her two missed appointments.  It is, of course, entirely possible a caller could direct a solicitation to multiple people during a single phone call, but that is not the case here.  It is clear Ms. Bagley was calling to speak with Mrs. Hamilton in order to solicit chiropractic services to her, due to her recent involvement in a traffic accident.[14]  When Plaintiff answered the phone, Ms. Bagley did not attempt to solicit chiropractic services to him, instead, she asked to speak to his wife.  Thereafter, Plaintiff procured his wife's presence on the phone line.  Plaintiff may have remained in on the phone call between Ms. Bagley and Mrs. Hamilton, but it is the finding of this Court that at no time did Ms. Bagley solicit chiropractic services to him.

Plaintiff's mere presence on the phone call, absent a solicitation directed to him,

_____

[13] "Solicitation" is not defined under the OCSPA, but is given its common meaning.  *Ferron v. Dish Network, LLC,* 195 Ohio App. 3d 686, 713 (Ohio Ct. App., Franklin County, Oct. 11, 2011) ("According to Black's Law Dictionary (5th ed. 1979), 'solicitation' means the following: 'Asking; enticing, urgent request.' And, according to Webster's Encyclopedic Unabridged Dictionary (Random House 1997), the definition of 'solicitation' includes the following: '2. Entreaty, urging, or importunity; a petition or request. 3. Enticement or allurement.'").

[14] Mr. Hamilton testified he was not involved in the car accident.

does not provide him with a cause of action under the OCSPA. This point is illustrated by the Supreme Court of Ohio's holding in *Culbreath v. Golding Enters., L.L.C.*, 114 Ohio St. 3d 357, 358 (Ohio 2007). In *Culbreath*, an attorney sought to recover damages under the OCSPA for a fax received by his law firm. Although the attorney clearly meets the definition of an "individual" under the OCSPA, the Supreme Court of Ohio looked instead to whether the recipient of the faxed solicitation – the law firm – satisfied the definition of an "individual" for purposes of the OCSPA. The Supreme Court of Ohio determined it did not, and "declined to recognize [the attorney's] right to maintain an action under the OCSPA based upon the fact that the law firm is not an 'individual' for purpose of the act." *Culbreath*, 114 Ohio St. 3d at 363. Thus, while the attorney may have actually received the faxed solicitation from the fax machine, and even read it, he had no cause of action under the OCSPA because the solicitation was not sent to him, but rather his law firm. Here, Plaintiff may have answered the phone call intended for his wife, and even stayed on the call, but such facts do not provide him with a cause of action under the OCSPA because he was not the recipient of any solicitation. *See D.A.N. Joint Venture III, LP v. Legg*, 2004 Ohio App. LEXIS 2480, *P27 (Ohio Ct. App. May 26, 2004) ("In this case, the [plaintiffs] were not consumers because they were not engaged in the consumer transaction. They were merely witnesses to the contract."); *see also Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167, 181 (Ohio Ct. App., August 26, 2008) (". . . we cannot envision that a generic salutation or brief common pleasantry at the beginning of a phone call, before any solicitation for a sale has commenced, is the

29

type of harm contemplated by the legislature in its passage of the CSPA.").

Because chiropractic services were not solicited to Plaintiff, he was not involved in a "consumer transaction," within the meaning of the OCSPA.  Plaintiff therefore cannot prevail on any claim under the Act.  Whether Plaintiff's wife has a cause of action under the OCSPA, of course, need not be decided by this Court because she is not a party to this case.

## IT IS THEREFORE ORDERED THAT:

1.  Judgment is entered in favor of Defendants Gordon J. Spurling, Westside Therapy Group, and Midwest Healthcare Management, and against Plaintiff David Hamilton on his claim under the Telephone Consumer Protection Act;

2.  Judgment is entered in favor of Defendants Gordon J. Spurling, Westside Therapy Group, and Midwest Healthcare Management, and against Plaintiff David Hamilton on his claim under the Ohio Consumer Sales Practices Act; and,

3.  The case is terminated on the docket of this Court.

March 20, 2013

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge